JOHN E. SENNOTT v. THE ST. JOHNSBURY AND LAKE CHAMPLAIN R. R. CO. AND LAMOILLE VALLEY R. R. CO.

[IN CHANCERY.]

*Railroad. Land Damages. Lien. Equitable Owner.*

1. An equitable owner of land who becomes the legal owner has a lien for damages on land taken by a railroad company, enforceable against a company now in possession, which succeeded to the rights of the company that first took the land; but the measure of damages is not an agreement made between the owner and the first company, as there was no such privity between the two companies as would bind the last one; but, in this case, it is the value of the land actually taken, as the orator was not the owner of the lands contiguous to that taken, when the present company took possession.
2. Interest is recoverable from the time the last company took possession instead of the time the orator acquired the legal title.

BILL IN CHANCERY. Heard on the pleadings and a special master's report, September Term, 1885, Franklin County, ROYCE, Chancellor. It was decreed *pro forma* that the defendants pay to the orator the sum of $431.20, and interest thereon from the 18th day of June, 1883, on or before June 1, 1886, or be enjoined from running and operating their railroad over, upon and across the premises described in the orator's bill. The orator in 1870 owned a farm of 450 acres situated in Bakersfield, in Franklin County. The defendant, The Lamoille Valley R. R. Co., located and commenced the construction of its said road, in 1871 or 1872, over and through said farm. But little work was done on that portion of the road until 1876 and 1877, when it was completed. Said railroad was put in operation August 1, 1877, by the said L. V. R. R. Co., which operated the same until July 1, 1880. The holders of the bonds, issued by the Lamoille Valley Company and two other railroad companies, and secured by mortgage on those railroads, foreclosed their mortgage, and obtained a final decree at the December Term, 1879, of Caledonia County Court of

Chancery. After the decree became absolute, the holders of the bonds proceeded, under the statutes of this State, to form themselves into a corporation under the corporate name of The St. Johnsbury and Lake Champlain R. R. Co. This company was duly organized, and went into operation of the railroad of The Lamoille Valley R. R. Co. on the first day of July, 1880. The farm was mortgaged to O. A. Burton for a large sum prior to 1870, and the mortgage was not discharged prior to June 18, 1883. On November 6, 1876, the orator sold and conveyed to W. M. Sennott " about 140 acres of said farm, being all that part of the farm through which said L. V. R. R. Co. had been located," but reserved all the land embraced in the survey of said railroad, not exceeding six acres. At the same time W. M. Sennott executed a mortgage deed of the land to the orator to secure $4,000, the purchase price.

This mortgage—May 2, 1877—was assigned by the orator to said Burton as collateral security for his debt due from the orator. Said W. M. Sennott never paid any portion of his debt, but continued to occupy the 140 acres, until he re-deeded June 18, 1883. In 1878 the orator was duly adjudged a bankrupt in the U. S. District Court, and J. J. Burgess was appointed his assignee. Said Burton, in pursuance to an agreement with the orator, purchased the interest of the orator's bankrupt estate in said farm, taking a deed from the assignee to himself, holding the title as security until June 18, 1883, when he deeded the farm to the orator, taking a mortgage back. On January 30, 1884, said Burton assigned this last mortgage to W. B. Shattuck as collateral security for a debt which he owed him. On November 4, 1885, the said Burton and Shattuck signed a writing by which they agreed that the " damages sought to be recovered in said cause, and the damages to the farm, * * * by reason of the taking of land," etc., be awarded, decreed and paid to the orator. The railroad took five and three-fourth acres of said farm.

December 6, 1875, the orator and the L. V. R. R. Co. entered into an agreement by which the former was to deed

the land included in the railroad map, not to exceed 5 3-4 acres, to the company, and it was to pay him $678. The master found the actual value of the land taken, without reference to the damages to the adjacent land, August 1, 1877, was $431.20, and submitted to the court whether this was the correct measure of damages. He found the actual damages, including damages to the contiguous lands, to be $631. As to further facts relating to the defendants, see *Adams* v. *St. J. & L. C. Railroad Co.* 57 Vt. 240.

*Edson, Cross & Start,* for the orator.

The statute providing for the assessing of damages for land taken for a railroad—Revised Laws, ss. 3359–66—contemplates that the parties may agree on the amount of damages, and provides for an assessment in case they do not agree; and the amount fixed, either by the agreement or by the assessment, is in contemplation of law the equivalent for the land taken, which the constitution requires to be paid in money.

When the suit is by the original land-owner with whom the agreement was made, the sum fixed by the agreement is just as conclusive as if it were fixed by assessment under the statute. After the agreement was made no assessment could be made by commissioners; for the jurisdiction of commissioners is confined to cases where the parties do not agree. R. L. s. 3359. If by the law, after the agreement was made, the railroad company could not call out commissioners to assess the damages under the statute, how, in view of the agreement fixing them, can they ask this court to assess them, and thereby change the equivalent to be paid, which was conclusively fixed before? Does the railroad company acquire such right by refusing to pay and occupying the land eight years without payment?

Between the owner of the land, with whom the agreement or assessment was made, and the railroad company taking the land and its successors, the amount fixed by the agreement or assessment is conclusive, and is the constitutional equivalent to be paid. *Hart* v. *Railroad Co.* 56 Vt. 96.

Where the suit is by a party who was not a party to the agreement fixing the amount, or where no agreement or assessment has been made, the court will, by its master, fix the amount, but not otherwise. *Kendall* v. *R. R.* 55 Vt. 438; *Adams* v. *St. J. & L. C. Railroad Co.* 57 Vt. 240.

*Burt & Burt,* for the defendant.

The St. Johnsbury and Lake Champlain R. R. Co. was not a party to the agreement between the orator and the agent of the L. V. R. R. Co., and is therefore not bound thereby. *Adams* v. *St. J. & L. C. Railroad Co.* 57 Vt. 240.

From the time when the St. J. & L. C. R. R. Co. first took possession of the land in question, July 1, 1880, down to June 18, 1883, Burton was the owner of the entire Sennott farm, so called, including the strip of land taken by the R. R. Co., except that Wm. M. Sennott had possession of, and the equitable right to redeem, the 140 acres, and excepting also that the orator had a homestead right, but not in the land taken by the R. R. Co., nor in the 140 acres deeded to Wm. M. Sennott. The possession of the strip of land by the St. J. & L. C. R. R. Co. down to June 18, 1883, was not therefore to the prejudice of the orator, but of Burton who owned it; the orator therefore is not entitled to interest on the value of the land taken except from June 18, 1883, the day on which he became the owner thereof by purchase from Burton.

The opinion of the court was delivered by

ROWELL, J. The orator seeks to stand as against The St. Johnsbury and Lake Champlain Company on his agreement of December 6, 1875, with the Lamoille Valley Company, whereby his land damages were fixed at $678, with interest thereafter. But the St. Johnsbury Company was not a party to that agreement; and following the Adams case, 57 Vt. 240, the agreement cannot be regarded as binding on that company on the ground of privity between it and the Valley Company, for it did not succeed to the property in a way to establish such privity.

Nor is the agreement binding on the St. Johnsbury Company by reason of the statute, as a judgment would have been; for in the Bridgeman case, 58 Vt. 198, a judgment against the Valley Company was held binding on the St. Johnsbury Company solely by force of the statute, and not at all on the ground of privity. But the statute has no effect upon the binding quality of agreements in this behalf, but leaves them to stand on general principles.

The St. Johnsbury Company is liable therefore only by reason of its own taking; but it is liable for the land actually taken as of the time when it first took it, for the orator was then the equitable owner of it, and has since become the legal owner. But it is not liable to him for damage to the land contiguous to the land taken, for he was not the owner of it at the time of taking.

The decree is modified so as to give the orator interest on the sum decreed from July 1, 1880, when the St. Johnsbury Company first took possession, instead of from June 18, 1883, when the orator acquired legal title from Burton; but in all other respects the decree is affirmed, and the cause remanded.

TAFT, J., dissents.